## NATIONAL LABOR RELATIONS BOARD v. MAYER.

### No. 13765.

United States Court of Appeals Fifth Circuit.

May 2, 1952.

Rehearing Denied June 6, 1952.

Morgan C. Stanford, Atlanta, Ga., A. Norman Somers, Asst. Gen. Counsel, and D. P. Findling, Assoc. Gen. Counsel, Washington, D. C., for petitioner.

John Wesley Weekes, Decatur, Ga., Abit Nix, Howell C. Erwin, Jr., Athens, Ga., for respondent.

Before HOLMES, BORAH, and STRUM, Circuit Judges.

STRUM, Circuit Judge.

Upon findings that respondent was guilty of unfair labor practices, in violation of Sec. 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1) and (5), as amended, the Board on March 2, 1951, ordered that respondent cease and desist; that he bargain with a designated union as the representative of his employees; and that he post notices of compliance, 29 U.S.C.A. § 160(c). The matter is here upon the Board's petition to enforce said order, and upon respondent's cross petition to set it aside, or in the alternative to deny enforcement, because respondent has complied with the order.

288

Respondent operated a small hosiery mill in Athens, Georgia, having about eleven employees. During October, 1949, nine of these signed cards designating American Federation of Hosiery Workers, an affiliate of C.I.O., as their bargaining representative. On October 26, 1949, respondent summoned to his office an employee named Ingram, who had signed one of the cards, and expressed to him respondent's strong opposition to unionization of his mill. A day or two thereafter, respondent stated to another employee, Gray, that he would not operate a union plant, but would move his machines out first.

A majority for the Union was reached on October 26, 1949. Respondent acquiesced in the designation, and on October 28, 1949, bargained with the Union at a conference lasting about five hours, but was unable to reach an agreement. The conference was recessed to October 31, 1949, when respondent's bookkeeper, who was more familiar than respondent with the financial affairs of the business, but who was then away from Athens, was expected to have returned. Respondent's knowledge of his business and financial matters was limited.

On October 31, 1949, the bookkeeper had not returned, but the bargaining conference was nevertheless resumed, respondent being accompanied at the conference by his friend Robert Noell, an Athens, Georgia, business man and member of the Junior Chamber of Commerce, who was familiar with respondent's financial affairs, but who had no connection whatever with respondent's business. The conference lasted about an hour, but again no agreement was reached, as respondent felt that he was economically unable to comply with the Union's demands. The Union requested another conference which was at that time refused by respondent because of the continued absence of his bookkeeper, whose advice he considered vital in considering the Union's demands. Whereupon the Union immediately "struck" the plant, and posted picket lines. On November 5, 1949, the Union requested a further bargaining conference, but respondent then declined, saying that he had turned the matter over to his attorney.

Between November 8 and 13, 1949, at the solicitation of Noell, respondent's friend, seven of the strikers signed a letter, dated November 8, 1949, addressed to the "Chairman" (Regional Director) of the Board at Atlanta, claiming that they constituted a majority of the employees, which at that time totaled only ten in number, and disclaimed the Union as their bargaining representative. This letter was received in the Board's Atlanta office, November 14, 1949. On the latter date, respondent and the seven signers of the letter traveled from Athens to Atlanta, Georgia, and discussed the letter with the Board's Regional Director. At the suggestion of the Regional Director, respondent then filed a petition for the holding of a representative election, pursuant to Sec. 9 (c)(1)(B) of the Act, as amended.

Two days later, on November 16, 1949, unfair labor practices charges were filed by the Union against respondent. Notwithstanding this, respondent further conferred with the Union representatives on November 21, and again on November 25, 1949, but the conferences were unsuccessful and negotiations ended. All but one of the employees who signed the letter of November 8, 1949, returned to work on December 7, 1949. The petition filed by respondent on November 14, 1949, for a representative election, based upon the above mentioned letter signed by the seven employees, was denied by the Regional Director on June 14, 1950.

The Board found that, in violation of Sec. 8(a)(1) of the Act, respondent committed unfair labor practices by his coercive statements to employees Ingram and Gray, by Noell's solicitation of the employees' signatures to the letter of November 8, 1949, repudiating the Union, and that respondent also committed unfair labor practices in violation of Sec. 8(a)(5) of the Act, by his failure to bargain in good faith with the Union, on and after November 5, 1949, as the representative of respondent's employees.

The Board ordered that respondent cease and desist: (1) from threatening his em-

ployees with economic reprisals because of their union activities or attitude; (2) from helping to prepare forms evidencing their withdrawal from representation by the Union; and (3) from in any other manner interfering with, or coercing, the employees in the exercise of their right to self-organization. Affirmatively, it ordered respondent to bargain collectively with the Union and to post the usual notices of compliance.

In N. L. R. B. v. Mexia Textile Mills, 338 U.S. 563, 70 S.Ct. 826, 94 L.Ed. 1067, the Supreme Court held that a Board order prohibiting unfair labor practices imposes a continuing duty, and that an employer's compliance with an order of the Board does not render the cause moot, nor deprive the Board of the right to secure from an appropriate court an enforcement order which would effectively bar a resumption of such practices.

In N. L. R. B. v. Sanson Hosiery Mills, 5 Cir., 195 F.2d 350 this court held that when the Board has duly certified a bargaining representative, such certification must be respected by the employer until set aside by the Board, even though the Union has meanwhile lost its majority support of the employees. When the Board has duly certified a Union, the employer may not thereafter decide for himself that the Union has lost its bargaining status and refuse to deal with it further. See also Franks Bros. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. Mexia Textile Mills, supra.

But this is not a case, such as these just cited, in which an employer has become "doubtful" of the status of a duly certified bargaining representative, and acting upon his own initiative decides that the union is no longer entitled to represent the employees and therefore refuses to deal with it further. This Union has never been certified by the Board as the representative of these employees. The employer voluntarily recognized and bargained with it upon presentation to him on October 26, 1949, of cards signed by his employees showing that nine out of eleven then desired representation by the Union.

On November 14, 1949, however, the situation had changed. On that day the employer was confronted with a written request of seven of his then ten employees to discontinue the Union as their representative. They said: "We do not want the C.I.O. or any other union to represent us in our labor relations." Not until then did respondent question the Union's status. Upon receipt of this letter, respondent and the seven employee-signers together visited the Board's Regional Director in Atlanta, who questioned the employees as to whether they signed the letter voluntarily. The evidence is uncontradicted that all employees answered that they did.

Under Secs. 1 and 7 of the Act, the employees have the right "to bargain collectively through representatives of their own choosing". They have the right to designate. They have the right to revoke. N. L. R. B. v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815, headnotes 7 and 9. Here, the employees first chose the Union, then repudiated it, as their representative. Though opposing the Union, respondent has endeavored to follow the expressed wishes of his employees. There appears here no effort on the part of the employer to subvert statutory processes, nor to defeat the functioning of the Board. It should be borne in mind that the employees, not the employer, are the actors in repudiating this Union. If we should compel respondent to bargain further with this Union, which the employees themselves have obviously repudiated, the result would be to deny them the right, secured by the Act, to bargain through the representative of their choice. The choice has here been made by the employees in a manner that does not admit of dispute. When, as here, the employer's recognition of the bargaining representative is not based upon a certification by the Board but is wholly voluntary and informal, we see no reason why the employer can not also accede to the wishes of seven out of his then ten employees, and discontinue dealing with it. It has been held that the employer can do this, even where the bargaining union has been duly certified by the Board. The action of the employees, evidenced by the

letter presented to the Board's Regional Director on November 14, 1949, relieved the employer from any duty to bargain further with the Union. N. L. R. B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927; N. L. R. B. v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815. See also N. L. R. B. v. Standard Steel Spring Co., 6 Cir., 180 F. 2d 942.

■ The testimony is uncontradicted that at least up until November 5, 1949, respondent in good faith bargained with the Union. In fact, there were two other conferences with the Union, on November 21 and 25, 1949, even after the employees had repudiated the Union, and after the Union had filed charges of unfair labor practices against respondent. It is true that the parties were unable to reach an agreement, but that of itself does not constitute a refusal to bargain. Not capitulation, but bona fide effort, is the criterion. N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 917; N. L. R. B. v. Corsicana Mills, 5 Cir., 179 F.2d 234; Globe Mills v. N. L. R. B., 5 Cir., 103 F.2d 91. There is no evidence, and nothing from which an inference can reasonable be drawn, that respondent did not in good faith endeavor to reach an agreement with the Union, so long as it remained the bargaining representative of these employees. His refusal to deal further with the Union came *after* the employees' repudiation of the Union.

■ The Board asserts that Noell's activities in securing the employees' signatures to the letter discontinuing the Union, constitute unfair labor practices which are attributable to respondent. This court has held that in order to charge an employer with the acts of another for the purpose here under consideration, such person must be one who in fact and law is the employer's agent. Such person must act under the employer's control and direction, or under his orders, or, if the acts were originally unauthorized, they must be ratified, expressly or impliedly, before they can be attributed to the employer. The mere fact that an employer receives and enjoys the benefits of the unsolicited or unauthorized acts of another does not of itself amount to a ratification. N. L. R. B. v. Russell Mfg. Co., 5 Cir., 187 F.2d 296; Id., on rehearing, 5 Cir., 191 F.2d 358; N. L. R. B. v. Tex-O-Kan Mills Co., 5 Cir., 122 F.2d 433, headnote 10. Other courts are in accord. See N. L. R. B. v. Mylan-Sparta Co., 6 Cir., 166 F.2d 485; N. L. R. B. v. American Pearl Button Co., 8 Cir., 149 F.2d 311. Compare N. L. R. B. v. Laister-Kauffmann Corp., 8 Cir., 144 F.2d 9.

■ It is conceded that Noell had no financial interest in, nor any control over, respondent's business, or the employees. The only relationship between respondent and Noell was that of friends. Nor is there any evidence that respondent requested, inspired, or was aware of what Noell did, nor that he ratified Noell's activities in securing the employees' signatures to the withdrawal letter presented to the Board's Regional Director on November 14, 1949. On the contrary, it appears that Noell acted entirely on his own initiative, and without respondent's knowledge. Even though respondent consulted with Noell at the conference with the Union on October 31, 1949, that fact does not support the inference that in asking the employees to sign the withdrawal letter, Noell did so at the request, or with the knowledge, of respondent. We find in Noell's activities nothing to create the impression amongst the employees that he was acting for or at the direction of respondent, nor that the employees were in any way intimidated or coerced. As stated, they personally advised the Board's Regional Director that they acted voluntarily. There is no basis upon which to attribute Noell's activities to respondent so as to charge the latter with unfair labor practices because of Noell's acts. See the cases last above cited.

■ Respondent's statements to employees Ingram and Gray in October, 1949, being coercive, constituted unfair labor practices. The Board is entitled to the enforcement of its order to cease and desist from activities of the character just mentioned, even though respondent has in fact ceased the practices. N. L. R. B. v. Mexia, supra. Since notices have already been

posted that respondent would cease and desist therefrom, it is unnecessary to post notices again. That portion of the Board's order requiring respondent to cease and desist from in any other manner interfering with, or coercing, his employees in the exercise of their right to self-organization, will also be enforced. As it is not shown that the employer has in any way participated in helping to prepare forms evidencing the employees' withdrawal from representation by the Union, there is no basis upon which to order the employer to cease and desist therefrom. Enforcement of that portion of the order is therefore denied. As respondent, for the reasons already stated, is under no obligation to bargain further with the above mentioned union, the Board's order requiring him to do so is without support, and enforcement thereof is in that respect also denied.

Enforced in part; denied in part.