**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ADHESIVE PRODUCTS CORPORA-TION, Respondent.**

**No. 143, Docket 24739.**

United States Court of Appeals
Second Circuit.

Argued Jan. 15, 1958.

Decided July 3, 1958.

Melvin Pollack, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Attorney, Washington, D. C., on the brief), for petitioner.

Samuel Gottlieb, New York City (Harry Giesow and Gainsburg, Gottlieb, Levitan & Cole, New York City, on the brief), for respondent.

Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.

MEDINA, Circuit Judge.

The issues litigated before the Board arose out of a labor dispute involving respondent Adhesive Products Corporation, a relatively small corporation manufacturing adhesives, coatings and related products at 1660 Boone Avenue, in the Bronx, New York City, and three unions. There was an employee's union, Adco Employees Association, with no affiliation outside Adhesive plant, which the Board found on sufficient evidence was not employer dominated, reversing the finding to the contrary by the Trial Examiner. Adhesive's first contract with Adco was signed on September 11, 1947. Over the years the employees had at various times threatened to join an outside union and they used Adco with some ingenuity in their dealings with Adhesive. It is probable that they did the same thing with conspicuous success in the labor dispute now before us for consideration. District 65, Retail, Wholesale & Department Store Union, AFL–CIO, the successful party in these proceedings, started to organize the plant in December, 1954. Two of the twenty employees of Adhesive were truck drivers who, when business was slow, worked in the plant as well as on the trucks. In the midst of the controversy between Adhesive and District 65, Local 810, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO, the third union, began picketing the plant, and this interfered with the delivery of Adhesive's products. Adhesive hired an independent trucking company with union-member employees to deliver its goods; the two truck drivers were temporarily laid off, and the pickets were removed. The two truck drivers, Hill and Sollecito, promptly joined Teamsters Local 810, were put back to work, the pickets did not return, and Adhesive later entered into a contract with Local 810. The arrangement with the independent trucking company was terminated. Ad-

hesive then negotiated a new contract with Adco, with additional benefits and increased wages for the workers; and District 65 was left out in the cold. The period of time involved is from December, 1954 to and including early February, 1955.

The gist of the charges against Adhesive is that it refused to bargain with District 65 after it knew that practically all the employees had signed up with District 65; that it discouraged the employees from remaining with District 65 by claiming that it was a communist union, and by offering wage increases and improved working conditions if they reactivated Adco; that it interfered with the reactivation of Adco and contributed financial and other support to it; and that Local 810 was brought into the picture through the connivance of Adhesive as a means of weaning the men away from District 65; all in violation of Section 8(a) (1), Section 8(a) (2), Section 8(a) (3) and Section 8(a) (5) of the Act, 29 U.S.C.A. Sections 158(a) (1), (2), (3) and (5). All these charges were sustained, except that Adco was found not to be employer dominated, as above stated, and the order we are asked to enforce directs Adhesive to cease and desist from assisting Adco and Local 810, or recognizing them as representatives of any of its employees until after it has complied with the terms of the order requiring Adhesive to bargain with District 65, and unless and until Adco or Local 810 has been certified by the Board as representative of the employees or any of them. The order also nullifies the existing contracts with Adco and Local 810 and directs Adhesive to bargain with District 65 and reimburse each of its employees in a sum of money equal to what has been checked off as dues to Adco or Local 810.

█ In order to apply the legal principles hereafter discussed we have examined the entire record which discloses "substantial evidence on the record considered as a whole" to support the charges and the order, except for the direction to pay back the dues checked off for Ad-

co, but the case turns on certain issues of veracity between Maury T. Medwick, Adhesive's president, and the union organizer for District 65, Morris Doswell and Philip Vicinanza, a type of professional union organizer, who sought and obtained employment as an ordinary worker for Adhesive but spent considerable time and effort in stirring up the employees and backing up the efforts of Doswell. Vicinanza was later discharged. Except for the matter of repayment of dues to members of Adco, which we shall discuss later, we have concluded that there must be a reconsideration of the issues by the Board, in the light of further testimony by Doswell and Vicinanza, and any other witnesses the Board or the Trial Examiner may wish to hear. This is because there was a clear and wholly unwarranted curtailment of the cross-examination of Doswell and, while the rulings on the cross-examination of Vicinanza were technically correct, Adhesive may wish to apply to the Board for certain relief and seek further examination of Vicinanza. In view of this conclusion, which is in accord with that arrived at by the Circuit for the District of Columbia in Communist Party of United States v. Subversive Activities Control Board, 102 U.S.App.D.C. 395, 254 F.2d 314, we find it not necessary to review the testimony in detail.

Although eight Adhesive employees also testified at the hearing, all called on behalf of petitioner, their testimony did little to clear up the conflicting statements made by Doswell, Vicinanza and Medwick since their recollection of the events of December, 1954 and January, 1955 was vague and uncertain. In addition, it is apparent from the transcript of the hearings that they attempted, whenever possible, to support their employer's position, and, in so doing, often had to contradict sworn statements given to an NLRB investigator. While their conflicting testimony could possibly be viewed as corroboration of Doswell's version of his dealings with Medwick, it also appears that many of the statements the men gave to the investigator were based on what Doswell had told them had transpired when he said he met with Medwick. Accordingly, in the last analysis, the case against Adhesive rested on the testimony of Doswell, as supported by Vicinanza, and the credibility of these two witnesses was a vital issue at the hearing.

■ We turn to the points urged by respondent as a basis for denying enforcement of the Board's order. Adhesive argues that a written statement submitted by Vicinanza to petitioner's counsel should have been made available at the hearing upon request, once the witness acknowledged that he made such a statement, to be used as a basis for impeaching the witness's credibility. The examiner refused to direct the production of this statement because of the Board's rule which provides that "(n)o * * * attorney * * * or other officer or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board * * * whether in answer to a *subpena, subpena duces tecum,* or otherwise, without the written consent of the Board or the chairman of the Board if the * * * document is subject to the * * * control of the Board; or the general counsel" if the document is subject to its control. NLRB Rules and Regulations § 102.87, Series 6, 16 F.R. 1934, 1947, 1948, as amended at 17 F.R. 4983. Despite this rule, respondent made no effort to obtain the necessary permission for the production of Vicinanza's statement. Since respondent does not question the validity of Section 102.-87 and since, as the hearing continued for approximately six weeks after Vicinanza testified, respondent cannot be heard to claim that there was insufficient time to comply with the "simple requirements" of this rule, the failure to make a proper demand for the production of the desired statement was fatal to respondent's contention that the examiner's ruling was erroneous. NLRB v. Jamestown Sterling Corp., 2 Cir., 211 F. 2d 725, 726.

■ Adhesive also contends that the examiner committed error in refusing its request that a written statement made by Doswell to a Board official in the course of the District 65 certification proceedings in February, 1955, be produced at the hearing for purposes of cross-examination of the witness. The circumstances under which the demand for the production of Doswell's statement was made differ significantly, however, from those under which Vicinanza's statement was sought. Doswell was being cross-examined with respect to when he first learned from Vicinanza of his considerable experience in union organization work. Finding himself uncertain with regard to specific dates, Doswell was about to take something from his pocket when counsel for petitioner said "Mr. Doswell, please put that away, rely on your memory." There followed a series of questions by respondent's counsel regarding any notes or memoranda Doswell had made pertaining to the meetings with Adhesive employees, and it developed that he had dictated a statement at a certification hearing which he had used about one month before testifying at the hearing in the case at bar to refresh his recollection. Thereafter, Doswell was asked, "Mr. Doswell, the copy of this paper that you said you dictated at the NLRB, have you got it with you now, and did you bring it here in order to help your recollection as to the testimony you were giving here?" Doswell acknowledged that he had it, and said he brought it "in case there was something that was not clear." Respondent's demand for the production of this paper was denied by the examiner on the ground that it was confidential and could not be produced other than in conformity with the Board rule which provides that " * * * all files, documents, reports, memoranda, and records pertaining * * * to the investigation or disposition of charges or petitions during the nonpublic investigative stages of formal proceedings, and all matters of evidence obtained by the Board or any of its agents in the course of in-vestigation, which have not been offered in evidence at a hearing before a trial examiner or hearing officer or have not been made part of an official record by stipulation, whether in the regional offices of the Board or in its principal office in the District of Columbia, are for good cause found by the Board held confidential and are not matters of official record or available to public inspection, unless permitted by the Board, its chairman, the general counsel, or any regional director." NLRB Rules and Regulations § 102.86(b), Series 6, 16 F.R.1934, 1947, 1948, as amended at 17 F.R. 4983. When Doswell resumed the stand on the following day he did produce a diary in which he had recorded the dates of certain meetings with Adhesive employees, and he claimed that this was what he had in his pocket while testifying the previous day. But this is by the way. We think it was clearly prejudicial error for the trial examiner to refuse to compel Doswell to take out the statement he said he had in his pocket when interrogated on the subject, and to permit counsel to see it at once and use its contents for the purpose of impeaching Doswell.

■ The statement which Doswell had in his pocket was not "confidential," since it was not within the scope of Section 102.86(b). That section makes confidential documents and reports "whether in the regional offices of the Board or in its principal office in the District of Columbia" and this regulation certainly does not include a statement in the possession of an individual not in any capacity connected with the Board or under its authority. If Doswell's statement was confidential when it was made before a Board official the confidential nature of the statement was waived when a copy of it was given to the witness.

Accordingly, the question presented is whether a statement admittedly used by a witness to refresh his recollection shortly prior to testifying at an administrative hearing must be produced on demand by counsel for the purposes of cross-examination. Without significant distinction between civil and criminal

proceedings, there has been considerable conflict of authority on this question, see 3 Wigmore on Evidence § 762, n. 4, but, in our opinion, this conflict has been resolved, by the decision of the Supreme Court in Jencks v. United States, 353 U. S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. In Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 995, 86 L.Ed. 1322, the Court recognized that where a witness admitted he had refreshed his recollection from a statement prior to testifying but "does not use his notes or memoranda in court" a party to the proceeding has a "right to have them produced and to inspect them." The Court held, however, that this right was not "absolute," but rather that the trial judge had discretion to deny inspection. In its decision in Jencks the court referred to its holding in Goldman, but then continued, "(w)e now hold that petitioner was entitled to an order directing the Government to produce for inspection all reports * * * touching the events and activities as to which (the witnesses) testified at the trial. We hold, further, that the petitioner is entitled to inspect the reports to decide whether to use them in his defense." 353 U.S. at page 668, 77 S.Ct. at page 1013. The Court did not consider it relevant that the witnesses had not testified that they refreshed their recollection by referring to these documents, and also it expressly held that it was unnecesary for the party demanding production and inspection to lay a preliminary foundation of inconsistency between the contents of the documents and the witnesses's testimony. Accordingly, these rules set forth in the Jencks decision provide an *a fortiori* basis for holding that the statement demanded in the case at bar should have been produced and made available for respondent's inspection if they are applicable to civil proceedings, such as administrative hearings, as well as to criminal trials. In our opinion, logic compels the conclusion that these rules are applicable to an administrative hearing. See Communist Party of United States v. Subversive Activities Control Board, 102 U. S.App.D.C. 395, 254 F.2d 314, 327–328; also Walling v. Twyeffort, Inc., 2 Cir., 158 F.2d 944, 948. The production and inspection, and possible use for cross-examination purposes, of such a document could serve only to test the memory and credibility of the witness, while, in the absence of a claim of confidence or privilege, there can be no sound reason to bar such production. The request in the case at bar was not a mere fishing expedition, but rather concerned the credibility of the most important witness who testified in suport of the charges. The statement had been identified and it was, in fact, on the person of the witness himself. We are at a loss to understand why the trial examiner did not compel its production forthwith; and his refusal to do so constituted error that could not have failed to prejudice Adhesive.

As further proceedings must be had in which Doswell may be further cross-examined after Adhesive has been permitted to see the statement, it may well be that Adhesive will decide to take proper steps to request the production of the statement by Vicinanza. In the absence of some compelling reason to withhold it, and none is apparent in the record before us, there is no reason to doubt that a proper application to the Board for the production of Vicinanza's statement will receive favorable consideration.

■ Enforcement of that portion of the Board's order which directed Adhesive to reimburse its employees in an amount equal to the sum which was checked off from their salaries as dues to Adco is denied because the record does not support the Board's assertion that such action "is appropriate and necessary to expunge the illegal effects of Respondent's unfair labor practices." The contract between Adco and Adhesive was signed early in February, 1955, but it was not until May 18, 1955, that Adhesive began the check-off of dues. There was no check-off provision in the Adco contract. Rather, at an Adco meeting of May 10, 1955, as recorded in the association's minute book, a motion was made, seconded, and agreed on by vote that the

employer's bookkeeper should be requested to deduct fifty cents per week per man from wages and deliver the check for this amount to the Adco's Secretary-Treasurer. This request was granted by Adhesive although each employee had not authorized the deduction with his written consent. At the time of the Board hearing the Adco expenses had been only fifty cents so its treasury held several hundred dollars which was loaned in small amounts to those employees who needed it.

Virginia Electric & Power Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L. Ed. 1568, in which the Supreme Court upheld enforcement of the Board's order directing reimbursement of checked-off dues money, is readily distinguishable from the case at bar. There the respondent company, shortly after signing a contract with a dominated union containing a check-off provision, made a payment of checked-off dues in the amount of several thousand dollars, and the Court sustained the Board's finding that the check-off was used by the employer " 'in order to entrench the (union) among the employees and to insure its financial stability.' " 319 U.S. at page 540, 63 S.Ct. at page 1218. See also N. L. R. B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 56–58. In the case at bar the check-off was used by the employer as a convenience for its employees and nothing more. In circumstances such as these there was no sound basis for the Board's order and its enforcement is, accordingly, denied. The validity of reimbursement orders necessarily depends upon the peculiar circumstances of each particular case; and we think N. L. R. B. v. Parker Bros. & Co., 5 Cir., 209 F.2d 278; N. L. R. B. v. Spiewak, 3 Cir., 179 F.2d 695, factually distinguishable.

The petition for enforcement is denied pending further consideration of the case as directed in this opinion.