NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
ADHESIVE PRODUCTS CORPORA-
TION, Respondent.

No. 243, Docket 25985.

United States Court of Appeals
Second Circuit.

Argued March 3, 1960.

Decided July 19, 1960.

Melvin Pollack, Attorney, National La-
bor Relations Board, Washington, D. C.
(Jerome D. Fenton, General Counsel,
Stephen Leonard, Associate General
Counsel, Marcel Mallet-Prevost, Assist-
ant General Counsel, Frederick U. Reel,
Attorney, National Labor Relations
Board, Washington, D. C., Stuart Roth-
man, General Counsel, Thomas J. McDer-
mott, Associate General Counsel, Robert
Sewell, Attorneys, National Labor Re-
lations Board, Washington, D. C., on the
brief), for petitioner.

Samuel Gottlieb, New York City
(Gainsburg, Gottlieb, Levitan & Cole and
Harry Giesow, New York City, on the
brief), for respondent.

Before LUMBARD, Chief Judge, and
MOORE and FRIENDLY, Circuit
Judges.

MOORE, Circuit Judge.

Upon the previous appeal this court
held, "The petition for enforcement is
denied pending further consideration of
the case as directed in this opinion" (258
F.2d 403, 409). To ascertain whether
this direction was followed, a brief rés-
umé of the relevant facts is required.
Adhesive Products Corporation (Adhe-
sive) is a manufacturer in New York
City. From September, 1947, at least un-
til April, 1954, Adhesive had a contract
with an employees' union, Adco Employ-
ees' Association (Adco). This union "the
Board found on sufficient evidence was
not employer dominated" (at page 405).
"Over the years the employees had at

various times threatened to join an outside union and they had used Adco with some ingenuity in their dealings with Adhesive" (at page 405). The last contract between Adco and Adhesive expired on April 8, 1954 but neither party concerned itself with a renewal. Nor is there any evidence that this status was not agreeable to both parties.

Prior to Christmas 1954 De Pena, an Adhesive employee, who apparently had the confidence of his fellow employees because he served as a member of the employees' negotiating committee, had authorization cards for Teamsters Local 239. Disgruntled over the failure to receive a Christmas bonus as large as expected, De Pena and others then met with Doswell, an organizer of District 65, Retail, Wholesale & Department Store Union, AFL–CIO (the charging party). A third union, Local 810, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO, was also in the picture.

In January, 1955, membership application cards for District 65 were signed by many employees and the same De Pena and others were members of a negotiating committee of five. District 65 claimed the right to majority representation and on January 24, 1955 filed a petition for certification with the Board. On January 26, 1955 Local 810 began picketing Adhesive's plant. Prior to February 3, 1955, the same committee on behalf of the employees negotiated a collective bargaining agreement between Adco and Adhesive which was signed on February 3, 1955 by all thirteen of Adhesive's production and maintenance employees.

Thus over a comparatively short period of time the employees had exhibited an interest in Local 239, Local 810, District 65 and their old union, Adco. The circumstances surrounding their final decision and the reasons therefor are by no means free from doubt. They may have been influenced at one time by District 65's professional organizers; at another time by Adhesive's president, Medwick. The Board, however, found that Adhesive unlawfully interfered with its employees in reactivating and assisting Adco. Two facts are particularly significant, first, that during this period of uncertainty De Pena was apparently the employees' choice as one of their principal representatives, first as the holder of their application cards for Local 239 and then as negotiator with District 65 and later for Adco; second, that Adco has been held not to have been employer dominated.

This court on the previous appeal characterized the case as turning on certain issues of veracity between Medwick, Adhesive's president, Doswell, the District 65 organizer, and Vicinanza, "a type of professional union organizer, who sought and obtained employment as an ordinary worker for Adhesive but spent considerable time and effort in stirring up the employees and backing up the efforts of Doswell" (at page 406).

Upon the original hearing and during cross-examination Doswell had reached into his inside pocket for a paper from which, according to his testimony, he had refreshed his recollection. When examining counsel requested its production, the Board's counsel instructed him to keep it in his pocket. This direction was sustained by the trial examiner. "We [were] at a loss to understand why the trial examiner did not compel its production forthwith; and his refusal to do so constituted error that could not have failed to prejudice Adhesive" (at page 408). Accordingly, this court directed "a reconsideration of the issues by the Board, in the light of further testimony by Doswell and Vicinanza, and any other witnesses the Board or the Trial Examiner may wish to hear." (at page 406).

This court's effort to return the case for further consideration of "the credibility of the most important witness" (at page 408) in the light of such facts as might be developed upon a second hearing turned out to have been a vain act because when falsity was developed, the trial examiner for the first time disclosed that he knew of the falsity even in the first hearing.

The court finds it difficult to reconcile the trial examiner's views that, assuming

"the employee Vicinanza was a paid organizer for District 65, that he did herd the Employees into District 65 because of their pent-up feelings against the Respondent through the use of mob psychology and without allowing them the opportunity of giving the matter due and proper reflection and consideration," with the statement that these facts "as a matter of law" are "completely immaterial to this case" and "of no concern to the employer" in determining whether the union selected is "of their own choosing." To the contrary, how could any court or administrative body reconcile such a state of facts with the freedom of choice intended by the Act to be granted to employees!

The Board's Supplemental Decision and Order, in effect, reaffirms its original order and directs that Adhesive (1) withdraw and withhold recognition from Adco and Local 810; (2) to bargain with District 65 as the exclusive representative of the employees; and (3) reimburse the employees for dues to Local 810. Such an order gives to District 65 the position of being in 1960 the exclusive representative of the employees upon the assertion of Doswell in January, 1955 that District 65 represented a majority, despite the fact that these same employees indicated the union "of their own choosing," Adco, within a comparatively few days after this claim by District 65.

Under these circumstances what relief is best calculated to give to the employees the rights to which they are entitled? First, they should not be made the pawns of any union, the company, or of the Board. Second, they should have an opportunity to express their choice in the manner provided by law.

In N. L. R. B. v. National Licorice Co., 2 Cir., 1939, 104 F.2d 655, the Board's finding of union representation related to a period two years earlier. The order directed the employer not to treat the company union as the employees' representative, there being evidentiary support for a finding of domination but the court modified the order making it "conditional upon the Board's ascertaining by a new election whether the union is now the choice of the majority" (at page 658).

In N. L. R. B. v. American Mfg. Co., 2 Cir., 1939, 106 F.2d 61, it was held "that the part of the order requiring collective bargaining with T. W. O. C. be made conditional upon the Board's ascertaining by an election whether that union is now the choice of the majority" (at page 69).

In International Association of Machinists, etc. v. N. L. R. B., 1940, 311 U. S. 72, 61 S.Ct. 83, 85 L.Ed. 50, the petitioner was a rival labor organization which the Board found had been so assisted by the employer that unfair labor practices permitted "the inference that the employees did not have that freedom of choice which is the essence of collective bargaining" (311 U.S. at page 79, 61 S.Ct. at page 88). The other union with a clear majority of all the employees had presented a written contract for collective bargaining. Therefore, there was adequate support for the finding that the petitioner did not represent an "uncoerced majority." There was no proof as to any change of status of the majority; hence no occasion to direct an election.

Subsequent to International Association of Machinists, supra, this court in an enforcement case, N. L. R. B. v. Acme Air Appliance Co., 2 Cir., 1941, 117 F.2d 417, in directing enforcement, modified the order directing the Board "to determine who, if any one, is at present the lawful bargaining agent of the Acme employees * * *" (at page 422).

In Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020, the Supreme Court said: "For a Board order which requires an employer to bargain with a designated union is not intended to fix a permanent bargaining relationship without regard to new situations that may develop. * * * A bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed. * * * After such a reasonable period the Board may, in a proper pro-

ceeding and upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships" (321 U.S. at page 706, 64 S.Ct. at page 819).

In N. L. R. B. v. Warren Co., 1955, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96, the Labor Board and the Court of Appeals had directed the company to bargain with the union which had been held to have a majority status. The court upon a showing that the company, disputing majority status, steadfastly refused to bargain at any time reversed a dismissal of a contempt proceeding. However, there, the company had notice of Board and Court of Appeals' determination as to the specific majority union; here, there was only a claim during a period of confusion and vacillation. Furthermore, instead of a refusal to bargain, there was bargaining with the employees and a contract within a few days, albeit with Adco rather than District 65.

In N. L. R. B. v. Stow Manufacturing Co., 2 Cir., 1954, 217 F.2d 900, the Board found improper interference by the company with the employees' free choice—in effect, domination and this court concluded that "the Union was the duly accredited representative of the employees from September, 1951, forward" (at page 905). The Board in its initial decision here said that "the record fails to establish either that the respondent was in a position to control the organization and functioning of Adco, or that it actively participated in Adco's internal affairs; rather, it affirmatively establishes that the employees themselves were in a position to and did in fact have effective control over the organization and functioning of Adco."

Despite the statement in N. L. R. B. v. Idaho Egg Producers, 9 Cir., 1956, 229 F.2d 821, 823 that "an employer may not set up as a justification for its refusal to bargain with a union the defection of union members which it had itself induced by unfair labor practices, even though the consequence is that the union no longer has the support of the majority," the actual facts disclosed that the "Respondent has made no showing of a change in conditions." Even where employees had bargained for a short time with a union which had a clear majority this did not preclude a change (N. L. R. B. v. Mayer, 5 Cir., 1952, 196 F.2d 286).

Keeping in mind the policy of the Act, namely, to encourage collective bargaining through representatives of the employees' own choosing (29 U.S.C.A. § 151), the Board and this court should endeavor to make this goal attainable. The most feasible procedure would appear to be that suggested by Judge Learned Hand in N. L. R. B. v. National Licorice Co., supra, and followed by Judge A. N. Hand in N. L. R. B. v. American Mfg. Co., supra, namely, to grant enforcement of Section 1(a), (c) and (e), to deny enforcement of Section 1(b) and (d) and Section 2(a)–(e) and to make the order "conditional upon the Board's ascertaining by a new election whether the union is now the choice of the majority." In this way the current wishes of the employees can manifest themselves under the aegis of the Board's supervision.

An enforcement order should be entered to the extent indicated in the foregoing opinion.

FRIENDLY, Circuit Judge (dissenting).

Sensible and attractive as is Judge MOORE'S solution of this long litigated case, I am unable to square it with what seem to me controlling decisions of the Supreme Court, International Association of Machinists v. N. L. R. B., 1940, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020, and N. L. R. B. v. Warren Co., 1955, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96, and an applicable precedent in our own Circuit, N. L. R. B. v. Stow Manufacturing Co., 2 Cir., 1954, 217 F.2d 900 certiorari denied 1955, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751. While there are, as always, some factual differences between those cases and this, the differences do not affect the principle. Neither can the authority of those precedents be overcome

by reliance on two of our decisions which antedate and are inconsistent with them; doubtless for this reason, in the Stow case, supra, Judge Learned Hand did not even cite his opinion in N. L. R. B. v. National Licorice Co., 2 Cir., 1939, 104 F. 2d 655, although the facts in Stow would have made reliance on National Licorice most appropriate if the latter still had vitality.

I dissent, with regret; I would grant enforcement, with reluctance.