FRANKS BROS. CO. *v.* NATIONAL LABOR RELA-
TIONS BOARD.

No. 521.   Argued March 2, 27, 1944.—Decided April 10, 1944.

*Mr. Benjamin E. Gordon,* with whom *Mr. Arthur V. Getchell* was on the brief, for petitioner.

*Mr. Alvin J. Rockwell,* with whom *Solicitor General Fahy, Mr. David Findling,* and *Miss Ruth Weyand* were on the brief, for respondent.

Mr. Justice Black delivered the opinion of the Court.

The single question presented is whether the National Labor Relations Board acted within its statutory authority in ordering petitioner to bargain collectively with a union which had lost its majority after petitioner wrongfully had refused to bargain with it.

In June 1941 forty-five of the eighty production and maintenance employees in petitioner's clothing factory designated the Amalgamated Clothing Workers of America as their bargaining representative. Attempts of the Union to negotiate with petitioner proved unsuccessful because of the latter's refusal to bargain, and the Union

filed with the Board a petition for an investigation and certification of representatives. A consent election was scheduled for July 25, and notices posted. Before the election was held, petitioner conducted an aggressive campaign against the Union, even to the extent of threatening to close its factory if the Union won the election. Thereupon the Union withdrew its petition for an election, and filed charges with the Board alleging that petitioner had engaged in unfair labor practices.

In the following months various conferences were held and correspondence exchanged between petitioner and the Board in an unsuccessful effort to persuade the petitioner to cease opposition to the Union. Finally on March 2, 1942, the Board issued a complaint against petitioner. Hearings on the complaint were conducted at length, and in October 1942 a final order was entered. The finding of the Board, not here challenged, was that the foregoing conduct of petitioner, together with related conduct unnecessary to be detailed, constituted unfair labor practices within the meaning of § 8 (1) and (5) of the National Labor Relations Act; 49 Stat. 449, 452, 453; 29 U. S. C. § 158 (1) and (5).

In reaching its conclusion as to the appropriate remedy for these unfair practices, the Board considered petitioner's contention that during the seven-month interval between the filing of the charges and the issuance of the complaint, thirteen of the Union's original members had been replaced by new employees in the normal course of business. This left the Union with only thirty-two of the eighty-five employees then in the unit which it represented, or less than a majority. But the Board found that the Union's lack of a majority was "not determinative of the remedy to be ordered." Citing many of its previous decisions involving similar situations, the Board concluded that "the only means by which a refusal to bargain can be remedied is an affirmative order requiring the employer

to bargain with the Union which represented a majority at the time the unfair labor practice was committed." 44 N. L. R. B. 898, 917. Accordingly, because it deemed such a provision "necessary to effectuate the policies of the Act," the Board included in its order a requirement that petitioner bargain collectively with the Union. The Circuit Court of Appeals upheld the Board, and directed enforcement of the order. 137 F. 2d 989. To consider an alleged inconsistency between the Circuit Court's decision and our decision in *Labor Board* v. *Fansteel Metallurgical Corp.*, 306 U. S. 240, 261–262, we brought the case here for review. 320 U. S. 734.

We think the decision of the Circuit Court correct under the Act and consistent with past decisions of this Court. Little need be added to what has been said on this subject in other cases. Out of its wide experience, the Board many times has expressed the view that the unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions. The Board's study of this problem has led it to conclude that, for these reasons, a requirement that union membership be kept intact during delays incident to hearings would result in permitting employers to profit from their own wrongful refusal to bargain. See, *e. g.*, Matter of Inland Steel Co., 9 N. L. R. B. 783, 815–816; Matter of P. Lorillard Co., 16 N. L. R. B. 684, 699–701. One of the chief responsibilities of the Board is to direct such action as will dissipate the unwholesome effects of violations of the Act. See 29 U. S. C. § 160 (a) and (c). And, "It is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged." *International Association of Machinists* v. *Labor Board,* 311 U. S. 72, 82.

That determination the Board has made in this case and in similar cases by adopting a form of remedy which

requires that an employer bargain exclusively with the particular union which represented a majority of the employees at the time of the wrongful refusal to bargain despite that union's subsequent failure to retain its majority. The Board might well think that, were it not to adopt this type of remedy, but instead order elections upon every claim that a shift in union membership had occurred during proceedings occasioned by an employer's wrongful refusal to bargain, recalcitrant employers might be able by continued opposition to union membership indefinitely to postpone performance of their statutory obligation. In the Board's view, procedural delays necessary fairly to determine charges of unfair labor practices might in this way be made the occasion for further procedural delays in connection with repeated requests for elections, thus providing employers a chance to profit from a stubborn refusal to abide by the law. That the Board was within its statutory authority in adopting the remedy which it has adopted to foreclose the probability of such frustrations of the Act seems too plain for anything but statement. See 29 U. S. C. § 160 (a) and (c).

Contrary to petitioner's suggestion, this remedy, as embodied in a Board order, does not involve any injustice to employees who may wish to substitute for the particular union some other bargaining agent or arrangement. For a Board order which requires an employer to bargain with a designated union is not intended to fix a permanent bargaining relationship without regard to new situations that may develop. See *Great Southern Trucking Co.* v. *Labor Board,* 139 F. 2d 984, 987. But, as the remedy here in question recognizes, a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed. See *Labor Board* v. *Appalachian Power Co.,* 140 F. 2d 217, 220–222; *Labor Board* v. *Botany Worsted Mills,* 133 F. 2d 876, 881–882. After such a rea-

sonable period the Board may, in a proper proceeding and upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships. *Id.;* see 29 U. S. C. § 159 (c).

That issuance of the order challenged by petitioner lay within the Board's discretion is settled by our holding in *Labor Board* v. *P. Lorillard Co.,* 314 U. S. 512, 513. The *Lorillard* case, argues petitioner, is distinguishable because in that case the Court pointed to the fact that, "The Board had considered the effect of a possible shift in membership. . . ." *Id.,* 513. But in this case also the Board considered the change in membership, and in addition relied in part upon the *Lorillard* decision to support its order. We find no possible valid distinction between this and the *Lorillard* case.

Nor is the *Lorillard* decision inconsistent with the earlier holding in *Labor Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240. In the latter case the Board's order to bargain with the union rested in part on its finding that the company should reinstate ninety-three discharged union members. The Board had not determined in that proceeding, nor did it argue in this Court, that the company should be compelled to bargain with the union if these ninety-three employees were denied reinstatement. After this Court, contrary to the Board's conclusion, held that these employees properly were denied reinstatement, the situation was the same as if the Board had not considered the effect of the change in union membership. Cf. *Labor Board* v. *P. Lorillard Co., supra.*

*Affirmed.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.