### JAFFEE v. HENRY HEIDE, Inc., et al.

United States District Court
S. D. New York.

Oct. 1, 1953.

George J. Bott, General Counsel, National Labor Relations Board, Washington, D. C., David P. Findling, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C., John Cuneo, Chief Legal Officer, New York City, James F. Foley, Washington, D. C., and Seymour Goldstein, New York City, for petitioner.

Schmidt, Egan & Murray, New York City, Godfrey P. Schmidt, Joseph A.

---

4. Ferguson v. Ford Motor Co., supra.

Egan, New York City, of counsel, for respondent Henry Heide, Inc.

Arnold Cohen, New York City, for Local 452, AFL.

McGOHEY, District Judge.

The petitioner, pending final disposition by NLRB of two complaints [1] charging violations of Sec. 8(a)(1), (2), (3) and (5) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1–3, 5), the Act,[2] seeks, pursuant to Sec. 10(j) thereof, 29 U.S.C.A. § 160(j), to restrain the respondent Heide from continuing the practices which are said to constitute the violations.

For reasons which will appear and on the findings of fact and conclusions of law hereafter set forth, the petition is granted.

Local 452 was granted leave to intervene as a party respondent. The respondents filed separate answers. All parties were fully heard. The Court having considered the pleadings, evidence, and the arguments and briefs of counsel, finds as follows.

### Findings of Fact

1. Petitioner is Regional Director of the Second Region of the National Labor Relations Board.

2. Respondent Henry Heide, Inc., a New York corporation, was and is engaged within this judicial district in the transaction in interstate commerce of its business as a manufacturer and wholesaler of candy and confectionery products.

3. Candy and Confectionery Union, Local 50, Retail, Wholesale and Department Store Union, CIO (hereinafter called Local 50) and Candy and Confectionery Workers Union Local 452, Bakery and Confectionery Workers International Union of America, AFL (hereinafter called Local 452) are labor organizations within the meaning of the National Labor Relations Act as amended and carry on their affairs as such in this judicial district.

4. The acts and conduct of Heide hereafter set forth have a close and substantial relation to trade and commerce among the several states.

5. Between 1944 and May 15, 1951, Local 50 and Heide were in reasonably harmonious relationship under a series of three labor contracts. Each of the first two had a term of approximately two years. The third, executed in July, 1950, expired by its terms on May 15, 1951.

6. From 1944, when it first represented Heide's employees, until June, 1949, Local 50 had been affiliated with CIO. On the latter date it changed its affiliation to AFL. Then a year later, in June, 1950, about a month before enter-

---

1. The first complaint, issued on Nov. 24, 1952 (Case No. 2–CA–2554), alleges that, although Candy and Confectionery Union Local 50, Retail, Wholesale and Department Store Union CIO (Local 50) had been certified on Oct. 9, 1951 as the exclusive bargaining agent of Heide's employees, Heide, on Feb. 15, 1952 and thereafter, "refused to bargain collectively" with Local 50 in violation of Sec. 8(a) (5); and that such refusal constituted restraint and coercion of Heide's employees in violation of Sec. 8 (a) (1).

The second complaint, issued on Jan. 14, 1953 (Case No. 2–CA–2907), alleges that, although Local 50 had been certified on Oct. 9, 1951 as the exclusive bargaining agent, Heide on Feb. 15, 1952 and thereafter "refused to bargain in good faith" with Local 50; that on Oct. 9, 1952 and thereafter Heide refused to recognize Local 50 as bargaining agent and since Dec. 10, 1952 has recognized Local 452; that on or about Jan. 7, 1953 Heide executed a collective bargaining contract with Local 452 in which (a) the latter is recognized as the exclusive bargaining agent of Heide's employees, and (b) membership in Local 452 and maintenance thereof are made conditions of employment during the life of the contract; that by reason of the foregoing Heide interfered with and coerced its employees in violation of Sec. 8(a) (1); supported Local 452 in violation of Sec. 8(a) (2); discriminated against employees belonging to Local 50 so as to discourage membership therein and to encourage membership in Local 452 in violation of Sec. 8(a) (3).

2. 29 U.S.C.A. § 141 et seq.

ing into its last collective bargaining contract with Heide, it reaffiliated with CIO, a relationship which still continues.

7. In January, 1951, Local 50 and Heide began negotiations for a new agreement. On April 12, 1951, while these negotiations were proceeding, Local 452 filed a petition pursuant to the Act seeking to supplant Local 50 as bargaining representative.

8. On consent of all parties, an election was held on May 16, 1951, in which Local 50 obtained 185 votes and Local 452 obtained 146 votes out of a total of 381 eligible voters.

9. Local 452 promptly filed objections. Five months elapsed before these were disposed of. The petitioner concedes that Heide was correct in declining, during this period, to bargain with Local 50.

10. Upon termination of their collective bargaining agreement on May 15, 1951, Heide and Local 50 agreed orally that pending the execution of a new contract Heide would continue to observe the provisions of their last contract governing disposition of grievances and arbitrating disputes in personnel and employment matters.

11. On or about Sept. 17, 1951, Heide disciplined by suspension one of its employees, Bennie Nocero, a shop steward of Local 50. The latter protested by calling a strike on Sept. 19, 1951, which continued to Jan. 4, 1952, a period during which Heide would normally be engaged in peak production.

12. On Oct. 9, 1951, the petitioner rejected the election objections of Local 452 and certified Local 50 as statutory bargaining representative of Heide's employees.

13. Thereupon Heide promptly arranged to and did meet with Local 50 on Oct. 19 to resume negotiations for a new contract. At this meeting Heide proposed arbitration to settle the strike. Local 50 refused. It announced that the strike would be continued, not only in protest against the Nocero suspension but also to enforce its contract demands, of which one was a wage increase of 26 cents per hour, and that the strike would be settled only when a contract was executed. Heide proposed an increase of 3 cents an hour. No agreement was reached.

14. Thereafter Heide and Local 50 held further bargaining sessions on Oct. 23, Oct. 26, Nov. 14 and Nov. 30, but without success. The officials of the New York Mediation Board, at whose office and suggestion the November meetings were held, failed to effect agreement on wage increases. This indeed proved, throughout all subsequent discussions, to be one of the three issues on which the negotiations foundered. The other issues were the duration of the contract and the type of union security to be provided. By Nov. 30, Local 50 had modified its wage demand to a 12½ cents per hour increase. Heide had amended its counteroffer to increase wages as follows: 3 cents per hour in a one-year contract; 5 cents per hour in a two-year contract; and 5 cents per hour plus cost of living increase in a three-year contract. Local 50 continued to ask for a closed shop provision which Heide refused to grant.

15. When the strike began only a few of the regular employees went through the union's picket line, and Heide, under the pressure of its Christmas trade demands, hired any workers available. Some came from the New York State Placement Bureau and from private employment agencies, and some were recommended by workers who had not joined the strike. Heide was unable, however, to get enough workers to maintain its required production.

16. On or about Dec. 10, members of Local 452 began to seek employment at Heide's and several were hired. One Goddard called by petitioner testified that at or about this date he heard Andrew Heide promise the president of Local 452 to assist that union's organizing efforts in exchange for its help in furnishing workers to Heide. Andrew Heide denied this.

17. Members of Local 452 employed during the strike thereafter sought to and did recruit new members for their union from among the other workers in the plant. Heide's witnesses said this was done without aid or encouragement from Heide. Witnesses called by petitioner asserted that Local 452 solicitors were assisted by Heide's officials.

18. On or about Dec. 10, Local 50 yielded on the matter of arbitration and proposed that Rev. Philip J. Carey, S.J., Director of the Xavier Institute of Industrial Relations, be the arbitrator. Heide agreed. Conferences were commenced at once and in three weeks the strike was settled on terms which were embodied in a written agreement signed on Jan. 3, 1952. The settlement agreement provided, among other things, that the parties would meet to discuss terms of a collective bargaining contract not later than Jan. 21, 1952; that beginning on Jan. 7, 1952, Heide would endeavor to reemploy on a seniority basis all strikers who desired to return, but that new employees who had been hired before Jan. 7 as replacements for strikers need not be dismissed; that union security would be provided through a maintenance-of-membership requirement which would become effective on Jan. 7, 1952, and "continue in effect until replaced by a labor contract between the parties or until otherwise lawfully terminated." Maintenance of membership was to be achieved by a "check off" of dues of all employees from whom authorizations to do so were furnished by Local 50. Heide told Local 50 it would not honor the cards filed with it prior to the strike and requested new ones. These were first presented by Local 50 on or about July 25, 1952.

19. All strikers who sought reemployment were taken back except a few whose jobs had been filled by workers employed during the strike. Some former employees had secured other employment and did not return. They were replaced by new workers. There is contradictory testimony as to whether preference in employment after the strike was given to members of Local 452.

20. After Jan. 3, 1952, and until Oct. 9, 1952, at least, each union conducted extensive propaganda campaigns among the workers and frequently asserted in handbills and otherwise that it represented a majority of the employees.

21. Collective bargaining sessions were first resumed on Feb. 8. They were not successful. At the second meeting on Feb. 13 substantial agreement was reached on most of the terms of a proposed contract, but no agreement was reached on the three principal issues of wage increases, union security and duration of the contract. In discussing the latter issue at this meeting, Heide's representative expressed doubt that Local 50 in fact represented the majority of the employees as then constituted and requested Local 50 to consent to a new election under Board supervision to determine this question. Local 50 refused.

22. On Feb. 15, 1952, Local 452, in a telegram to Heide, claimed to represent a majority of the employees in the bargaining unit and demanded recognition as their representative. On Feb. 18, an NLRB attorney advised Heide and Local 50 that this claim did not justify interruption of their bargaining discussions.

23. On Feb. 19, Heide and Local 452 separately filed "representation petitions," each asking that an election be held to determine which union the Heide employees as then constituted desired as their representative.

24. On Mar. 6, 1952, both petitions were dismissed by the Regional Director on the ground "that they were filed prematurely in relation to the certification year." These rulings were sustained by NLRB on April 2, 1952.

25. Heide refused to bargain during the pendency of these proceedings. When they were finally disposed of by NLRB a bargaining session was arranged with Local 50 to be held on April 8, 1952. This, like its predecessors,

failed to produce agreement on any of the three main issues.

26. Some time after this meeting Heide learned that on April 4 Local 452 had filed a new petition seeking the "de-certification" of Local 50 as bargaining representative. On learning this Heide again refused to bargain until NLRB finally disposed of this petition on May 14, 1952.

27. Another bargaining session was thereupon arranged for May 22, but at Heide's request it was postponed until May 28. On that date the discussion stalled at the outset on the issue of the duration of the proposed contract. Heide insisted that, because it believed there was an obvious substantial split in union loyalties among the workers, it ought not and would not enter into a contract with Local 50 for a period beyond Oct. 9, 1952, the end of "the certification year," when it claimed an election should be held. Local 50 rejected such a contract.

28. Neither party proposed another bargaining session until late in July when a meeting was arranged for Aug. 1. It was held on that day. Prior thereto, on July 25, Local 50 for the first time since the strike settlement on Jan. 3 had presented to Heide cards which purported to authorize the "check off" of union dues. 186 cards were presented. There were then approximately 360 workers in the bargaining unit. Heide then said it would honor only the cards of employees who personally confirmed them. Some of the cards presented bore the names of persons who had not been in Heide's employ since the beginning of the strike on Sept. 19, 1951. Those still in Heide's employ were called to the office of Heide's personnel manager and required to confirm or repudiate their cards in writing. 66 confirmed and their dues were checked off. At the Aug. 1 meeting and at a later one on Aug. 28, the parties again failed to agree on Oct. 9, 1952 as the termination date of the contract. Heide then proposed a contract for some unspecified period beyond that date if Local 50 would consent to a prompt election and agree to terminate the contract if it lost the election. Local 50 rejected this proposal and the meeting ended. No further bargaining sessions have been held between Heide and Local 50.

29. From time to time after Feb. 15, 1952, Heide, by bulletins mailed to their homes or displayed at the plant, informed its employees of what had occurred at various meetings with representatives of Local 50. In some of these Heide noted "rival union" claims and expressed doubt that Local 50 represented a majority. In a bulletin issued on May 29, 1952, Heide said it had refused to make a contract of two years' duration with Local 50 and "would not consider a contract beyond Oct. 9, 1952; because we realized [the union president's] plan to imprison you in a long term contract, to prevent an election."

30. On Oct. 9, 1952, one year after the certification of Local 50 as bargaining representative, no agreement had been reached between the union and Heide. The latter on Oct. 10 advised Local 50 by letter that since it believed Local 50 no longer enjoyed majority support of the employees in the bargaining unit, Heide had no right to further recognize Local 50 as bargaining agent for those employees.

31. On Dec. 1, 1952, Heide advised Local 50 that it had received that day a communication from Local 452 stating: "The Union will not subject its members employed by your company to further procedural delays, or further dilatory tactics which deny them the right of representation, and unless immediate recognition is granted, it will invoke economic sanctions against your company." Heide's letter further stated that Local 50 had frustrated Heide's efforts to have the rival representation claims of Local 50 and Local 452 resolved through a Board election and that it had therefore determined to recognize whichever union "can show to some impartial third party union pledge cards indicating majority support."

32. On Dec. 2, 1952, Heide posted on its bulletin board copies of letters addressed to both locals concerning the show of cards. It also posted a bulletin addressed to the employees calling their attention to these letters and asserting that the show of cards was made necessary because "one of the unions, taking advantage of a technical board rule which prevents elections while charges are pending, has blocked the election by filing false charges against us." The bulletin concluded with the following paragraph: "We think it is high time to end all delays, technicalities and legalisms in order to get down to *your choice* and *your right* under the law, *to be represented by the union chosen by a majority of you.*"

Local 50 denounced the proposed show of cards and reiterated its position that its certification in Oct., 1951, required Heide to recognize and bargain with it as the statutory bargaining representative. Heide then enlisted the services of an impartial third party who conducted the card check on Dec. 10, 1952. Local 50 did not participate. The results were certified as showing that of the 361 employees in the unit Local 452 held applications from 216.

33. Since then Heide has recognized only Local 452 as the bargaining representative of the employees. Collective bargaining negotiations which began on or shortly after Dec. 10, 1952, resulted in a contract executed on Jan. 7, 1953, to run for approximately three years. This contract does not, as alleged, make membership in Local 452 a condition of employment. It provides that maintenance of membership shall be a condition of continued employment. It grants some wage increases and covers other matters on which no agreement was ever reached in the discussions with Local 50.

Sec. 10(j) does not authorize this Court to determine whether Heide has in fact committed the unfair labor practices charged in the two complaints. Congress has committed that function to the Board. Thus, whether Heide's refusal to bargain pending final disposition of the various petitions and appeals after Feb. 15, 1952 was motivated by genuine doubt as to the majority status of Local 50, is not a question for this Court but for the Board.[3] In this proceeding the Court has power only to grant or deny intermediate relief pending the Board's final disposition of the complaints filed by the petitioner. Accordingly, the issue here is only whether on the evidence presented the Board could reasonably find that Heide committed unfair labor practices alleged.[4] There is the sharpest conflict in the testimony of Goddard and A. Heide as to the alleged agreement between the latter and the president of Local 452. There is also conflicting testimony as to whether Heide assigned organizers of Local 452 to supervisory positions for which they were not qualified, in order to enable them to move freely from one department to another and thus facilitate their recruiting activities; and as to whether Heide deviated from its normal practice in requiring written confirmation of the check-off cards presented by Local 50 in July, 1952. These conflicts raise questions of credibility which the Board must resolve.[5] And regardless of how this Court, if it could, might dispose of those questions, there is no doubt that the Board may reasonably resolve them in favor of the witnesses offered by the petitioner to support the charges rather than those called by Heide to rebut them. If the Board should so resolve them, then it would, of course, have reasonable ground to find that Heide did engage in unfair labor practices. Accordingly, the Court makes the further finding of fact and draws the conclusions of law which follow.

34. There is reasonable cause for the Board to believe that Heide has

---

3. N. L. R. B. v. Consolidated Machine Tool Corporation, 2 Cir., 163 F.2d 376, 378, certiorari denied 332 U.S. 824, 68 S.Ct. 164, 92 L.Ed. 399.

4. Douds v. Local 294, etc., D.C., 75 F. Supp. 414, 418.

5. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368.

(1) interfered with, restrained or coerced its employees in the exercise of their rights to self organization and collective bargaining; (2) assisted and supported Local 452; (3) discriminated in regard to hire so as to encourage membership in Local 452 and to discourage membership in Local 50; (4) refused to recognize and bargain with Local 50 as the bargaining representative of employees in the bargaining unit; (5) recognized and bargained with Local 452 as such representative; all in violation of Sec. 8(a), subsections (1), (2), (3) and (5) of the Act; and that a continuation of these practices will impair the policies of the Act.

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this proceeding, and under Sec. 10(j) of the Act has the authority to grant injunctive relief.

 2. In order to preserve the issues presented for the determination of the Board as provided in the Act, and to avoid irreparable injury to the policies of the Act to the interest of the public, employees, and employers, it is appropriate, just and proper, that pending final adjudication by the Board of the said issues, Heide, its agents, servants, employees, attorneys, and all persons acting in concert with them, be enjoined and restrained from recognizing or bargaining or contracting with Local 452 as bargaining representative of any of its employees in the unit for which Local 50 was certified as collective bargaining representative on Oct. 9, 1951, or in any other manner giving support or assistance to Local 452; or giving effect to the collective bargaining contract it entered into with Local 452 on Jan. 7, 1953, or any other collective bargaining contract it may have with Local 452, or acts in furtherance or support thereof, or like or related acts, or conduct whose commission in the future is likely or fairly may be anticipated from respondent's acts and conduct in the past.

The respondents assert with great earnestness that an election held promptly under Board supervision would quickly and finally determine majority status, end union rivalry among the employees, and thus, presumably, solve all problems raised here. Accordingly, they offer to consent to an injunction if it is conditioned on the holding of such an election, and urge the Court to make such a decree. This Court, however, may not thus by-pass the statutory plan under which the Board, subject to only limited review, and that by a Court of Appeals, is authorized to determine whether unfair labor practices have occurred. If it should find such practices by Heide then the Board, not this Court, is the appropriate body to determine how their effects are to be expunged.[6]

Submit proposed decree.

---

6. Franks Bros. v. N. L. R. B., 321 U.S. 702, 704, 64 S.Ct. 817, 88 L.Ed. 1020.