NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MOORE'S SEAFOOD PRODUCTS, INC.,
Respondent.

No. 15510.

United States Court of Appeals
Seventh Circuit.

Oct. 28, 1966.

Rehearing Denied Dec. 23, 1966.

Rehearing Denied Dec. 23, 1966.
(En Banc)

Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, George B. Driesen, Atty., N.L.R.B., for petitioner.

Myron E. Ropella, Albert H. Petajan, Roemer & Ropella, Milwaukee, Wis., for respondent, Moore's Seafood Products, Inc.

Before KILEY, SWYGERT and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

The Board has petitioned for enforcement of its order based upon findings of Moore's Seafood Products' unlawful coercion and interference with employee rights in violation of section 8(a) (1) and of refusing to recognize and bargain

in good faith with the Union[1] in violation of sections 8(a) (5) and 8(a) (1). We enforce the Board's order.

The Union was certified as bargaining agent of Respondent's employees October 19, 1962. On March 11, 1963, the Union and Moore's entered into a maintenance of membership agreement to run until March 10, 1964, and thereafter from year to year, unless terminated by either party on written notice not less than sixty days prior to any expiration date. Under the terms of the agreement, Respondent could, "at least" fifteen days before expiration of the contract or any yearly renewal, inform its employees of their right to continue as Union members or withdraw from the Union. In December, 1963, the Union gave due notice of its desire to reopen the contract and negotiations followed until May 20, 1964. Moore's conduct during this period is the basis for the 8(a) (1) complaint. On May 25, Moore's challenged the Union majority and refused to recognize it as bargaining agent. The general counsel's complaint alleging the 8(a) (1) and (5) violations was filed on June 19, 1964.

■ The trial examiner found that Respondent had violated section 8(a) (1) but that it did not violate section 8(a) (5). With respect to the 8(a) (1) violation, the Board sustained the trial examiner's finding based on Respondent's circulation on March 2, 3 and 4, 1964, of a petition disavowing the Union among employees, prohibition of employees' conversations about the Union on their own time, suggestion of an "inside"

union and interrogation of and threats to employees over support of the Union. The only issue presented concerning the 8(a) (1) violation is the substantiality of the evidence on the record as a whole. We have considered the objections made, and we hold that there was substantial evidence in the record as a whole to support the findings of the Board.[2]

With respect to the 8(a) (5) violation, the trial examiner found that Moore's refusal to bargain was not unlawful because the Union did not command the support of a majority of the employees on March 1.[3] At the hearings Moore's contended that the "critical date" for determining majority for purposes of the 8(a) (5) claim was March 11, 1964, the day after the contract, as renewed, expired. The examiner decided, however, that because of Respondent's unfair labor practices beginning on March 2, the "critical date" was March 1, subject to evidence that defections after that date were not caused by the unfair labor practices. Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); Joy Silk Mills, Inc. v. NLRB, 87 U.S.App. D.C. 360, 185 F.2d 732, 744 (1954), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951).

The trial examiner decided that on March 1 the bargaining unit consisted of 77 employees, finding that all but one of a group referred to as "laid off employees"[4] should be excluded. He found that 44 of these 77 were Union members on March 1.[5] He further found, how-

1. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 64.

2. We need not discuss the Board's challenged disagreement with the examiner's finding against the claim that Respondent was guilty of surveillance. There is sufficient basis, without that element, for the 8(a)(1) violation.

3. The defense of good faith doubt of majority status was not raised in this court.

4. These employees were laid off by Moore's because of the termination of the night shift. The factual issue before the trial examiner was whether they had been terminated or merely laid off without a loss of employee rights. The examiner found that with one exception (Libakken) they were terminated prior to March 1.

5. The trial examiner referred to "42 or 43" depending on the inclusion of one Schueler. This reference did not include Libakken, an admitted Union member who was one of the "laid off" employees. The exclusion of Libakken from this total is the apparent source of confusion as to the total found by the Board to support the Union. See note 6 infra.

ever, that in February, prior to any unfair labor practices, six of the Union members had an intention to leave the Union and that this evidence "disentangled" their subsequent defections from other defections attributable to the unfair labor practices. This finding rested upon his inference of "unequivocal action" by the six employees, demonstrating their desire not to be represented. Five of these employees had signed a paper repudiating the Union, and the other, as well as two of the signers, had expressed their intentions to leave the Union to the Union steward. Thus, the examiner concluded that only 38 out of 77 supported the Union.

The Board disagreed with the examiner and found that Moore's had unlawfully refused to bargain with the Union. The only finding of the Board we need consider is the inclusion of the six employees excluded by the examiner in determining majority.[6] The Board found that the six employees took no unequivocal action to repudiate the Union until each wrote a letter of resignation to the Union and gave copies to Respondent and that since these letters were written after March 1 their resignations did not impair the Union majority. If the Board's finding is justified, the 8(a) (5) violation is established.

There is no question of credibility of the testimony of the six employees, even though the examiner stated "I credit their testimony." Their testimony is uncontroverted.

■■ From the uncontroverted testimony, the Board was entitled to draw the inference that the action taken by the six employees was not unequivocal. Universal Camera Corp. v. NLRB, 340 U.S. 474, 494, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It was a reasonable exercise of the Board's expertise to rule that the evidence of disaffection in February was not "determinative" to disentangle the later unequivocal resignations from the other effects of Respondent's unfair labor practices.[7] See Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It was within the province of the Board to infer that the destruction of the signed paper and the comments to the Union steward indicated merely an unsettled attitude prior to the unfair labor practices. NLRB v. National Seal Corp., 127 F.2d 776, 779 (2d Cir. 1942). "It is for the Board, not the courts to determine how the effect of prior unfair labor practices may be expunged." Franks Bros. Co. v. NLRB, 321 U.S. 702, 704, 64 S.Ct. 817, 818, 88 L.Ed. 1020 (1944).

We need not and do not reach the question of what evidence is necessary to

---

6. In determining the size of the bargaining unit, the Board included an additional five of the "laid off" employees, plus two others, for a total of 84. The number of Union supporters was found to be 49, on the basis of the following: the addition of the seven added to the unit total (who were admittedly Union members); the addition of the six employees excluded by the examiner because of their pre-unfair-labor-practice intention to leave the Union; and the subtraction of one employee included by the examiner but found by the Board to have joined the Union after March 1. Although there seems to be a disparity of one employee in the computations of the Board and the examiner (our computations based on the Board inclusions and exclusion put the number at 50), there is no need to consider it. If the Board was correct in including the six employees, the Union had

a majority (at least 42 of 77, excluding Schueler and Libakken) without regard to the other findings.

7. The Board's continued reference to the "critical date" somewhat clouds the issue in this case. The rule supporting the choice of the "critical date" is that an employer may not assert a lack of majority status as a defense to an 8(a) (5) violation when the defections are due to his previous unfair labor practices. Medo Photo Supply Co. v. NLRB, 321 U.S. 678, 687, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); Joy Silk Mills, Inc. v. NLRB, 87 U.S.App.D.C. 360, 185 F.2d 732, 744 (1950), cert. denied, 341 U.S. 914, 71 S. Ct. 734, 95 L.Ed. 1350 (1951). Our holding in this case is confined to the Board's refusal to consider "equivocal" evidence as determinative of the cause of the defections of the six employees involved.

rebut the presumption that defections subsequent to unfair labor practices will be attributed to those practices.

We need go no further in affirming the Board's decision, reported at 152 N.L. R.B. No. 66 (May 19, 1965). So far as needed to support our judgment and reasoning, we adopt that decision.

The order will be enforced.