399 F.2d 409
 NATIONAL LABOR RELATIONS BOARD, Petitioner, And Truck Drivers, Oil Drivers, Filling Station and Platform Workers, Local 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor,
v.
MONTGOMERY WARD & CO., Incorporated, Respondent.
 No. 16602.
 United States Court of Appeals Seventh Circuit.
 July 26, 1968.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Gregory L. Hellrung, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Lawrence M. Joseph, Attys., N.L.R.B., Washington, D. C., for petitioner.
 Sheldon M. Charone, Sherman Carmell, Carmell & Charone, Chicago, Ill., for intervenor.
 Mark C. Curran, Daniel Walker, B. Raoul Yochim, Chicago, Ill., for respondent.
 Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 The National Labor Relations Board (Board) has petitioned for enforcement of its order that Montgomery Ward & Co., Incorporated (Ward) cease and desist from unfair labor practices and upon request, bargain collectively in good faith with the Union. We enforce the order.
 
 
 2
 Early in January, 1966, the intervenor Union was conducting an organizing campaign in a group of Ward's auto service centers in the Chicago metropolitan area. On January 3 the Union filed unfair labor practice charges against Ward. On January 11 the Union and Ward met and discussed the charges and a demand by the Union for recognition as bargaining agent. In the meeting the Union agreed that employees of each center should be a separate bargaining unit; and Ward agreed to make a card check and to recognize the Union as bargaining agent if the cards established a Union majority.
 
 
 3
 On January 21, 1966, the Union withdrew the charges previously filed with the Board. On February 11, Ward sent the Union a Recognition Agreement in which it recognized the Union as bargaining agent for employees at the Old Orchard Service Center in Skokie, Illinois. On February 14, an employee at that center filed a decertification petition with the Regional Director. After a hearing on March 3, the Director allowed the petition and directed an election. The Union moved for reconsideration of that decision. The Director, in light of Keller Plastics Eastern, Inc., 157 NLRB 583, reconsidered and vacated his decision and transferred the "issues" to the Board. The Board followed Keller in dismissing the petition in an order dated June 16, on the ground that the Union had not been afforded a reasonable opportunity to prove itself as the employees' bargaining agent and that the Union, having been duly recognized, could not be decertified prior to being afforded such an opportunity.
 
 
 4
 On May 26, 1966, the Union filed the charge, now before us, that Ward "on or about February 14, 1966 and continuing thereafter" refused to bargain with it as agent for the Old Orchard Center employees in violation of 8(a) (5) and (1). The General Counsel issued a complaint which alleged Ward's refusal to bargain "since on or about February 14, 1966 * * * and * * particularly on or about June 22, 1966 * * * and * * * June 24, 1966." Ward's answer denied that a majority of the employees at Old Orchard had on or about February 10 selected the Union as bargaining agent, but admitted that Ward recognized the Union as exclusive bargaining agent on February 11. It denied that the Union requested bargaining prior to June 22, but admitted refusing to bargain, and relied in justification for its refusal upon the then pendency of the decertification petition signed by a "majority" of the employees.
 
 
 5
 The General Counsel's motion for summary judgment, based upon his contention that the Board's decision of June 16, 1966, had resolved all genuine issues of material fact concerning the Union's bargaining status, was granted. The Board found that the Union had requested bargaining on June 22, and that Ward had refused on or about June 24.
 
 
 6
 The principal issue presented by this case is whether the Board erred in holding that Ward violated 8(a) (5) and (1) by refusing to bargain with a union which it had recognized on the basis of a card check, when Ward's refusal to bargain was because a majority of employees in the bargaining unit had signed a decertification petition which the Board dismissed in order to give the union a reasonable time to prove itself. If the Board's ruling refusing to hold a decertification election was proper, the Union was the bargaining representative of the employees, and the employer was under a duty to bargain with it.
 
 
 7
 The Board relies upon Franks Bros. Co. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020, and Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, to sustain its position. There are significant factual distinctions between the case before us and both the Franks and Brooks cases.
 
 
 8
 In Franks a union's majority was dissipated after an employer's unfair labor practice in refusing to bargain. The Supreme Court held that the Board could appropriately find that the unfair labor practice had undermined the prestige of the Union and require the employer to bargain with it for a reasonable period despite the loss of majority. In the case before us there is no allegation that a prior unfair labor practice contributed to the Union's loss of majority.
 
 
 9
 The holding in the Brooks case is that an employer may not refuse to bargain with a certified union during the one year period following certification, although he is presented with evidence which leads him to believe that the union has lost its majority status. This holding does not reach the question of whether the Board may refuse to order an election on a request by a majority of employees that the union be disqualified as bargaining agent for the employees.
 
 
 10
 The union in Brooks had been certified by the Board within a year of the refusal to bargain, and accordingly the Board was precluded from holding a decertification election, but the Court nevertheless stated that, "If the employees are dissatisfied with their chosen union, they may submit their own grievance to the Board." In the case before us there is no statutory bar to a decertification election and the employees have submitted a disavowal of the Union which the Board has rejected.
 
 
 11
 The question here therefore is not whether an employer may refuse to bargain with a certified union during the year following certification, because he has evidence that the union has lost its majority status. The question is whether an employer may refuse to bargain, with a recognized but uncertified union, on the ground that the Board has rejected a petition signed, three days after recognition, by the majority of his employees, requesting that the Board disqualify the union as their bargaining agent. The question of the propriety of Ward's refusal to bargain can be answered only by determining the propriety of the Board's rejection of the employees' petition. This necessity of determining the validity of the Board's policy of refusing to hold a decertification election until a recognized union has acted as bargaining agent for a reasonable time distinguishes Brooks. And, unlike the Brooks case, this case involves a union which was recognized on the basis of a card check rather than on the basis of an election and Board certification.
 
 
 12
 Although neither Franks nor Brooks is binding precedent here, both are useful in resolving the issue before us. Franks is useful since it approved a Board order requiring an employer to bargain with a minority union, and therefore the Supreme Court had to meet the contention that the order violated the right of the employees to choose their own bargaining representative. The Supreme Court rejected this contention because it found that the order was a reasonable exercise of the Board's responsibility to "direct such action as will dissipate the unwholesome effects of violations of the Act," and because the order
 
 
 13
 does not involve any injustice to employees who may wish to substitute * * * some other bargaining agent or arrangement * * * [since] a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed.
 
 
 14
 This finding of no injustice in requiring employees to accept the Franks union as a bargaining agent for a reasonable time recognized the significance of industrial stability as a factor in limiting the employees' freedom of choice.[1]
 
 
 15
 The Supreme Court in Brooks lists, with apparent approval, five reasons for imposing a requirement limiting the freedom of employees to disavow a bargaining agent they have chosen. Four of these reasons are pertinent to the question of whether a recognized but uncertified union should be afforded a reasonable time to succeed as bargaining agent:
 
 
 16
 (1) The choice of a bargaining agent is like the choice of a political candidate and in both cases making the choice binding for a fixed time would promote a sense of responsibility of choice and a needed coherence in administration.
 
 
 17
 (2) A union should be given time to carry out its mandate so that it will not be forced to bargain in an atmosphere demanding immediate and highly successful results.
 
 
 18
 (3) An employer should not be allowed to feel that by stalling the negotiation process he may be able to undermine union strength.
 
 
 19
 (4) Raiding and strife between competing unions should be minimized.
 
 
 20
 The present case presents an apparent conflict between two important goals of the National Labor Relations Act: preserving a free employee choice of bargaining representatives, and encouraging the collective bargaining process. We believe that in this situation the Board should be left free to utilize its administrative expertise in striking the proper balance. The Board here had ample reason for refusing to allow the employees' decertification petition and for requiring the employer to bargain. Under these circumstances we should not interfere with the Board's determination. The Sixth Circuit has recently reached the same result under similar circumstances. NLRB v. Universal Gear Service Corp., 6th Cir., May 16, 1968, 394 F.2d 396.
 
 
 21
 Ward argues that it should not be required to bargain with the Union because the Union was recognized on the basis of a card check rather than an election, and it is unfair to bind employees for a lengthy period on the basis of such an informal and uncertain method of selection. Sec. 9 authorizes both methods of selection, and we see no reason to set aside the Board's decision to ignore this distinction in this case.[2] Both employers and employees have adequate methods of challenging the existence of majority support for a union at the time it was recognized by an employer on the basis of a card check. Even the good faith recognition of a minority union by an employer is considered illegal assistance in violation of the National Labor Relations Act, International Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762, and it is settled that an employer may refuse to bargain with a union on the basis of a card check if he has a good faith doubt of the union's majority status. 29 U.S.C. § 159(c) (1) (B). This court, as well as others, requires that signatures on authorization cards be obtained only by proper methods so that they will truly represent a reasoned choice by employees. NLRB v. Dan Howard Mfg. Co., 7th Cir., Jan. 12, 1968, 390 F.2d 304.
 
 
 22
 Ward urges upon us the "implication" it sees in International Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762, that an employer "need not and indeed he must not, bargain with an uncertified union * * * which loses its majority status as a result of repudiation by the employees." In that case the employer had recognized in good faith a union which at the time represented only a minority of employees — although it later gained a majority — and the Court held the recognition an 8(a) (1) unfair labor practice in violation of Sec. 7 organization rights, and an 8(a) (2) violation. If there is that implication, which we do not decide, it is of no aid here, since we have before us recognition by Ward of the Union, after Ward's card check established the Union's majority.
 
 
 23
 The decision in NLRB v. Clegg, 8 Cir., 304 F.2d 168, does not support Ward's contention. There the Court held that an employer had no duty to bargain with an uncertified union when, after representing the employees for six years, it lost its majority status. The union in Clegg, unlike the Union here, had been afforded a reasonable time to prove itself. Even if the Union in Clegg had been certified, the employer would have had no duty to bargain. Celanese Corp. of America, 95 NLRB 664.
 
 
 24
 The Board's order will be enforced.
 
 
 
 Notes:
 
 
 [1]
 "It is true, of course, that employees should be substantially as free to abandon a labor organization as they are to join it. But freedom of choice does not postulate the indulgence of every caprice which an employee may entertain. Labor law must be adapted to the dynamic structure of industrial relationships. * * * The price of freedom to bargain collectively is responsibility in the exercise of the privilege of choice
 "Majority status may change from day to day in a particular company due to fluctuations in employment. Without a degree of durability, a collective bargaining relationship cannot operate successfully." Cushman, The Duration of Certifications by the National Labor Relations Board and the Doctrine of Administrative Stability, 45 Mich.L.Rev. 1, 8.
 
 
 [2]
 "To give greater weight to certification * * * would place a premium on resort to the administrative processes of the Act and would discourage voluntary recognition. * * * The doctrine of administrative stability has equally great usefulness in situations involving voluntary recognition." Cushman, op. cit., 45 Mich.L.Rev. 1, 10