**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KEY MOTORS CORPORATION, Respondent.**

**No. 77–2240.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1978.

Decided Aug. 9, 1978.

Arthur D. Rutkowski, Evansville, Ind., for respondent.

Before PELL and WOOD, Circuit Judges, and HARPER, Senior District Judge.*

PELL, Circuit Judge.

■ The sole issue in this application for enforcement is whether the National Labor Relations Board (Board) may order an employer to bargain for a reasonable time after a Board-approved settlement agreement even though the employer never refused to bargain until after the union had lost majority support and the settlement agreement itself did not arise out of or concern a claim of refusal to bargain.

Key Motors Corporation (employer) had entered successive collective bargaining agreements with Local 215, International Brotherhood of Teamsters (union) since about 1964, the most recent of which expired on April 30, 1975. In late March 1975, they began negotiating on a new contract. On May 1, 1975, following an impasse in negotiations, the union rejected the employer's final offer and the employees thereafter worked without a contract. On June 17, 1975, the employees went on strike, but the employer and union continued negotiations.

On March 17 and April 14, 1975, pursuant to charges filed by the union, the General Counsel issued complaints against the employer. The complaints alleged that the employer had violated §§ 8(a)(1) and (3) of the National Labor Relations Act by interrogating employees concerning their union membership and sympathies in late September or early October 1975; by suggesting and encouraging its employees in mid-October 1975 to file a decertification petition; and by discriminatorily discharging an employee on January 9, 1976.

The Regional Director of the Board approved a settlement agreement on May 14, 1976, between the employer and the union in which the §§ 8(a)(1) and (3) charges were dismissed and in which the employer agreed

Michael Murchison, N. L. R. B., Washington, D.C., for petitioner.

---

\* Senior United States District Judge Roy W. Harper of the Eastern and Western Districts of Missouri is sitting by designation.

to reinstate certain strikers and not to interfere with its employees' § 7 rights and to bargain with the union upon request. The agreement also stated that the employer did not admit the commission of any unfair labor practices. An inconclusive bargaining session was held on June 17, 1976. At the next scheduled session, on June 30, 1976, the employer withdrew recognition of the union on the ground that it had objective facts showing that a majority of the employees did not want the union to represent them.[1] Thereafter, the employer refused to bargain with the union.

On the basis of this conduct, the Board found that the employer had violated §§ 8(a)(5) and (1) of the Act. It ordered the employer to cease and desist from these unfair labor practices and to bargain upon request with the union. The Board reasoned that the employer's agreement to bargain in the settlement created an insulated bargaining period during which the employer was required to bargain regardless of the union's loss of majority support. The Board relies principally on *Poole Foundry & Machine Co. v. N. L. R. B.,* 192 F.2d 740 (4th Cir. 1951), *cert. denied,* 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952), in which the Board ordered an employer to bargain for a reasonable time after entering into a settlement agreement. In that case, however, unlike the present case, the employer had been charged with a § 8(a)(5) refusal to bargain which was dismissed as part of the settlement. Because *Poole* is thus distinguishable, and because we are of the opinion that an extension of *Poole* to cover this case would exceed the Board's remedial authority, we deny enforcement of the Board's order.

 An analysis of the background of the *Poole* doctrine buttresses our conclusion. After a union is certified, there is an irrebuttable presumption of majority status for one year,[2] after which the presumption becomes rebuttable. *Brooks v. N. L. R. B.,* 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). During the certification year an employer refusal to bargain is a per se violation of § 8(a)(5) and the union can obtain a bargaining order as a remedy without having to prove majority status. *See generally* R. Gorman, Basic Text on Labor Law (1976). After the certification year, the employer may refuse to bargain with the union if the employer has a reasonably based good faith doubt of the union's continued majority status. If, after the certification year, the employer refuses to bargain but does not have a good faith doubt of the union's majority status, the Board may remedy this § 8(a)(5) violation by ordering the employer to bargain for a reasonable time regardless of the union's lack of majority support. *See Franks Bros. Co. v. N. L. R. B.,* 321 U.S. 702, 705–06, 64 S.Ct. 817, 819, 88 L.Ed. 1020 (1944). The rationale of this remedial scheme is that when a bargaining relationship is interrupted by an employer's wrongful refusal to bargain and then restored by the Board's bargaining order, that bargaining relationship "must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed." *Id.*

In *Poole, supra,* this same rationale was applied to a Board-approved settlement agreement in which the employer had agreed to bargain in exchange for dismissal of § 8(a)(5) charges. Underlying this rationale are the competing interests of employee free choice versus stable bargaining relationships and industrial peace. The Board has implicitly made the determination that employee free choice may be temporarily sacrificed (in that an employer may be forced to bargain with a union that no

---

1. The employer was presented on June 28 and 29, 1976, with statements to this effect signed by a majority of its employees.

2. There are a few extraordinary exceptions to this rule. The presumption may be rebutted even during the certification year if the certified union became defunct, or if as a result of a schism, substantially all the members and officers of the union transferred their affiliation to a new local or international, or if the size of the bargaining unit fluctuated radically within a short time. *Brooks v. N. L. R. B.,* 348 U.S. 96, 98–99, 75 S.Ct. 176, 99 L.Ed. 125 (1954).

longer has the support of a majority of the employees) for a "reasonable time" so as to give the bargaining relationship an opportunity to succeed and thereby promote industrial stability. We have no difficulty with this determination. It appears to us, however, that the primary justification for this infringement on employee free choice is to restore with some force a bargaining relationship that was interrupted as a result of the employer's refusal to bargain. That justification is absent here.

In the present case, unlike in any other case in which the Board has ordered the employer to bargain for a reasonable time on the basis of a settlement agreement, the employer was not even alleged to have refused to bargain prior to the settlement. When the union filed charges with the Board, which were ultimately settled, it never charged the employer with refusing to bargain; nor did the complaints filed by the Board. Because the bargaining relationship was, therefore, never interrupted by the employer's refusal to bargain, there is no justification for sacrificing employee free choice by ordering the employer to bargain with a minority union.[3]

■ The Board argues that an employer that enters a settlement agreement which includes a bargaining provision undertakes a *clearly-defined* obligation to bargain for a reasonable time after the settlement. We would agree if the bargaining provision specifically stated that the employer shall bargain for a *reasonable time even if the union loses majority support.* More of a borderline case might exist if the language had even included a provision requiring the employer to bargain *for a reasonable time.* Absent this or similar language, the more logical interpretation of a bargaining provision in a settlement which does not settle a § 8(a)(5) charge is that the employer shall bargain in good faith until such time as it has a reasonably based good faith doubt of the union's majority status.

The Board, in its brief, attempts to draw support for its argument from an analogy to a settlement agreement in a private lawsuit. It states that "[a] party who agrees to settle a private lawsuit by paying a sum of money may not, for instance, justify a refusal to make payment on the ground that the settlement agreement was unfairly imposed or that the underlying dispute was not litigated." If we may borrow the Board's analogy, ordering the employer to bargain in the present case is similar to a plaintiff who settles a private lawsuit for a certain sum of money and then seeks more money from the settlement on the basis of an obligation that it never alleged in its original complaint. The "sum of money" in the Board's analogy here did not include bargaining beyond the time at which the employer had a reasonably based and good faith doubt of the union's majority status.

Finally, we note if the Board is of the view in a particular case that, despite any lack of continuance of good faith bargaining, a settlement agreement to be approved by it should contain a reasonable time proviso, it is in a position to withhold its approval until such a provision is inserted.

For these reasons, we deny enforcement of the Board's order.

Enforcement Denied.

---

**3.** If the employer's conduct, allegedly violative of §§ 8(a)(1) and (3), had been so serious as to subvert the bargaining relationship, the union presumably would have filed a § 8(a)(5) charge as well.