**AMERICAN OPERA MUSICAL THEATRE COMPANY, INC., Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.**

**Docket Nos. 01–4025, 01–4053.**

United States Court of Appeals, Second Circuit.

June 18, 2002.

Neil Capobianco, New York, NY, for the Petitioner.

Ruth E. Burdick, National Labor Relations Board, Washington, DC, for the Respondent.

Present MESKILL, SACK and BRIGHT,[1] Circuit Judges.

## SUMMARY ORDER

Petition to review and modify or set aside, and cross-petition to enforce an order of the National Labor Relations Board ("NLRB" or "Board") ordering petitioner American Opera Musical Theatre Company (American Opera) to cease and desist from refusing to recognize and negotiate with Local 802 of the Associated Musicians of Greater New York ("Union" or "Local 802").

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged and decreed that the petition to review and modify or set aside the Board's order is DENIED and the cross-petition to enforce the order is GRANTED.

## BACKGROUND

American Opera operates a small nonprofit chamber opera company that employs local and emerging musicians to help them gain experience. Diane Corto (Corto) is the Artistic Director. American Opera was scheduled for two performances of

1. Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

"La Boheme" at Staten Island College on October 31 and November 1, 1998. Eight of the nine musicians scheduled to play at Staten Island College (the Staten Island Musicians) were Union members.

On or about October 28th, Staten Island College canceled the October 31 performance, citing poor ticket sales. On or about that date, Tim Dubnau, Local 802's director of organizing, contacted Corto by telephone and relayed to Corto the Staten Island Musicians' complaints about their working conditions and compensation. Dubnau offered Corto the option of negotiating with Local 802 a collective bargaining agreement and granting the Staten Island Musicians priority hiring for all future engagements. On or about November 1, 1998, in response to a faxed letter from Dubnau, Corto responded, essentially accepting Dubnau's offer to collectively bargain with the Union and offer the Staten Island Musicians priority hiring.

American Opera subsequently performed at venues in Kingston, NY, Maryland, West Virginia, Florida, and North and South Carolina. Corto gave the Staten Island Musicians the right of first refusal for the Kingston, N.Y. and Maryland performances and negotiated their wages and compensation with Dubnau. Upon returning from the remaining concerts on the tour, Corto met with Union representatives at the Union's offices and was presented with a collective bargaining agreement. Corto made no counteroffer at that time and subsequently refused to negotiate with the Union.

The Union filed a complaint with the NLRB, which subsequently filed a complaint against American Opera. An Administrative Law Judge (ALJ) held a hearing and issued an opinion concluding that American Opera had recognized Local 802 as the exclusive bargaining representative for its musicians. The ALJ concluded that by unilaterally withdrawing recognition of the Union and refusing to negotiate in good faith, American Opera had engaged in unfair labor practices. 29 U.S.C. § 158(a)(5). The NLRB adopted the ALJ's opinion and issued an order requiring American Opera to cease and desist from refusing to recognize and bargain collectively with the Union. *American Opera Musical Theatre Company*, 332 N.L.R.B. No. 173, 2001 WL 44228 (Jan. 8, 2001).

American Opera petitioned this Court to review and modify or set aside the Board's order. The Board cross-petitioned for enforcement of the order. In support of its petition, American Opera argues, *inter alia*, that (1) the Union never attained majority status in the bargaining unit defined by the Board, and (2) American Opera did not voluntarily recognize the Union as the exclusive bargaining representative of its employees because the Union never demonstrated its majority status.

## DISCUSSION

### A. *Standard of Review*

In reviewing the Board's factual findings we must determine whether they are supported by "substantial evidence" in light of the record as a whole. *See* 29 U.S.C. §§ 160(e) & (f); *Schnurmacher Nursing Home v. NLRB*, 214 F.3d 260, 265 (2d Cir.2000). " 'Substantial evidence' means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elec. Contractors v. NLRB*, 245 F.3d 109, 116 (2d Cir.2001) (quotation marks omitted).

We give the Board the greatest deference and "a degree of legal leeway when it interprets" the National Labor Relations Act. *NLRB v. Town & Country Elec.*, 516 U.S. 85, 90, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995). In doing so, we must be satisfied that the Board's legal conclusions have a "reasonable basis in law." *AT&T v.*

*NLRB,* 67 F.3d 446, 451 (2d Cir.1995) (quotation marks omitted). "While we review mixed questions of fact and law *de novo,* we defer to the Board's decision when there appears to be more than one reasonable resolution and the Board has adopted one of these." *Elec. Contractors,* 245 F.3d at 116 (quotation marks omitted).

### B. *Majority Status*

█ American Opera's first argument is that the Union does not represent a majority of the appropriate bargaining unit defined by the Board.

The Board's complaint defined the appropriate bargaining unit as "[a]ll musicians . . . employed by [American Opera]." American Opera argues that the Board's definition encompasses at least thirty-six musicians (nine musicians each for four separate venues). The Union has made no representation or offered any proof that it represents anyone other than the Staten Island Musicians. American Opera argues that it would therefore be an unfair labor practice for it to negotiate with the Union because the Union did not represent a majority of "all musicians employed by American Opera."

The Board noted in its decision, however, that "[t]he [administrative law] judge found . . . that a unit comprised of [American Opera's] musicians is an appropriate unit. The unit found appropriate by the judge is the unit that the Union sought." The Board states in its brief to this Court, "the Union claimed to represent only the 9 Staten Island musicians, and did not seek to represent the student musicians who performed elsewhere." However inartfully the bargaining unit is defined by the Board in its complaint, there is substantial evidence in the record to support the Board's conclusion that the unit was appropriate. In addition, as noted by the Board at oral argument, American Opera can petition the Board for a clarification of

the appropriate bargaining unit. *See* 29 C.F.R. § 101.17 ("If there is a certified or currently recognized representative of a bargaining unit and there is no question concerning representation, a party may file a petition for clarification of the bargaining unit.").

### C. *Voluntary Recognition*

█ American Opera next claims that it did not effectively voluntarily recognize the Union because the Union never demonstrated its majority status.

When an employer validly recognizes a Union as the exclusive bargaining representative of its employees, the employer is required to negotiate with the Union for a reasonable time. *Franks Bros. Co. v. NLRB,* 321 U.S. 702, 705, 64 S.Ct. 817, 88 L.Ed. 1020 (1944). American Opera claims that because the Union did not *demonstrate* that it enjoyed majority status, American Opera could not validly recognize the Union and cannot be forced to bargain collectively with it because to do so would constitute an unfair labor practice. *See NLRB v. Albany Steel,* 17 F.3d 564, 568 (2d Cir.1994).

Precisely because employer recognition of a minority union is a violation of the Act, however, there has developed a "presumption that a union recognized by an employer does, in fact, represent a majority of the workers in the unit." *Royal Coach Lines v. NLRB,* 838 F.2d 47, 51 (2d Cir.1988). American Opera can rebut that presumption only by coming forward with evidence challenging the legitimacy of the recognition. *Id.* at 54. It has failed to do so.

First, American Opera rehashes its argument (rejected by the ALJ, the Board, and *supra* Part B) that the Union did not represent a majority of the bargaining unit. Second, American Opera claims the Union "overreached" by taking advantage of Corto's inexperience with labor relations

matters. An employer's unfamiliarity with labor laws is not an excuse for violating those laws. *See In re Air Disaster Lockerbie Scotland on Dec. 21, 1988,* 37 F.3d 804, 818 (2d Cir.1994) ("[I]gnorance of the law is no excuse.... While cases where the rule is cited typically involve criminal offenses, it applies equally in civil cases." (quotation marks and citation omitted)); *see also Clinton Packing Co.,* 191 N.L.R.B. 879, 884 (1971) ("[S]tatutory rights [conferred by the NLRA] cannot be denied ... because [an employer's] manager ... misunderstood or was unaware of his legal obligations."), *enforced in relevant part,* 468 F.2d 952 (8th Cir.1972).

American Opera further argues that Dubnau's faxed request to Corto for negotiation did not include the words "recognize" or "exclusive bargaining representative." But a union's request for recognition and bargaining "need take no special form, so long as there is a clear communication of meaning." *Scobell Chem. Co. v. NLRB,* 267 F.2d 922, 925 (2d Cir.1959).

Because American Opera voluntarily recognized the Union as the exclusive bargaining representative of its musicians, it is required to continue negotiations with the Union for a reasonable time and in good faith. *See Franks Bros. Co.,* 321 U.S. at 705, 64 S.Ct. 817; 29 U.S.C. § 158(d) (the obligation to bargain collectively requires the parties to confer in good faith). It is not required to come to an agreement with the Union. *Id.* (the obligation to bargain collectively in good faith "does not compel either party to agree to a proposal or require the making of a concession").

American Opera can, among other things, seek to limit the scope of any collective bargaining agreement to the Staten Island Musicians or to the geographical area covered by the Union. *See id.* (bargaining should be "with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder"). Or, as noted above, it can petition the Board for a clarification of the appropriate bargaining unit. *See* 29 C.F.R. § 101.17. Nothing in the Board's order or this decision should be read to preclude American Opera from pursuing any of these courses of action.

We have considered the remainder of American Opera's arguments and find in them no basis to modify or set aside the Board's order. Accordingly, the Board's petition to enforce the order is hereby GRANTED.